In the United States District Court
For the Northern District of Illinois
Eastern Division

| | |
|---|---|
| MAXIMUM INDEPENDENT BROKERAGE, LLC, an Illinois limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>ADRIAN SMITH, ERICH STEINHAUS, JODY OSTER, STEPHEN BARTELL, and BURNS & WILCOX, LTD., a Michigan corporation,<br><br>        Defendants. | Case No. |

# Complaint for Injunctive and Other Relief

Plaintiff MAXIMUM Independent Brokerage, LLC complains of defendants Adrian Smith, Erich Steinhaus, Jody Oster, Stephen Bartell, and Burns & Wilcox, Ltd., as follows:

## Allegations Common to All Counts

### A. The Parties

1.      MAXIMUM Independent Brokerage, LLC ("MAXIMUM" or the "Company") is an Illinois limited liability company with its principal place of business in Chicago, Illinois. MAXIMUM offers insurance brokerage and underwriting facilities to the construction, energy, gaming, healthcare, habitational, manufacturing, and real estate industries, among others.

2.      Adrian Smith ("Smith") is an Illinois citizen who resides at 6579 Windham Lane, Long Grove, IL 60047. Smith was employed by MAXIMUM from on or about November 8, 2010, to April 4, 2016, when he voluntarily resigned.

3.      Erich Steinhaus ("Steinhaus") is an Illinois citizen who resides at 106 Bedford Road, Mundelein, IL, 60060. Steinhaus was employed by MAXIMUM from on or about November 8, 2010, to April 4, 2016, when he voluntarily resigned.

4.     Jody Oster ("Oster") is an Illinois citizen who resides at 573 E. Willow Street, Elburn, IL 60119. Oster was employed by MAXIMUM from on or about November 8, 2010, to April 4, 2016, when he voluntarily resigned.

5.     Stephen Bartell ("Bartell") is an Illinois citizen who resides at 3942 N. Kolmar Avenue, Chicago, IL 60641. Bartell was employed by MAXIMUM from on or about November 8, 2010, to April 4, 2016, when he voluntarily resigned.

6.     Burns & Wilcox, Ltd. ("Burns & Wilcox") is a Michigan domestic profit corporation doing business at 155 N. Wacker Drive, Suite 1830, Chicago, IL 60606.  Burns & Wilcox is an independent wholesale insurance broker and underwriting manager in the environmental, recreation, marine, high net worth, professional, transportation and excess casualty industries.

## B.  Jurisdiction

7.     Jurisdiction for this action is brought pursuant to 28 U.S.C. § 1331 as an action arising under federal law.  Jurisdiction for state claims is brought under 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claim.

8.     The federal law claim arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) — Count 11.  The state law claims are for breach of contract (Counts 1-4), misappropriation of trade secrets (Counts 5-8), tortious interference with contract (Count 9), tortious interference with reasonable expectation of economic advantage (Count 10), and civil conspiracy against all defendants (Count 12).

9.     Because defendant Burns & Wilcox does business in this district and has a physical presence in this district, venue in this district is proper under 28 U.S.C. § 1391(c). Defendants Smith, Steinhaus, Oster and Bartell entered into the contracts with MAXIMUM that

are part of the subject matter of this case in this district, where MAXIMUM's principal office is also located. Defendants Smith, Steinhaus, Oster and Bartell also worked for MAXIMUM in this district. With knowledge that MAXIMUM's principal office is located in this district, the defendants directed tortious activities within this district, including, on information and belief, seeking to sell to MAXIMUM's customers and divert sales to Burns & Wilcox in this district, making venue in this district proper under 28 U.S.C. § 1391(b)(2).

## C. MAXIMUM's Employment of Defendants Smith, Steinhaus, Oster and Bartell

10.     From November 8, 2010, to April 4, 2016, MAXIMUM employed defendants Smith as its Senior Vice President, Steinhaus as its Account Manager, Oster and Bartell as its Assistant Vice Presidents. During that time, MAXIMUM educated and trained defendants Smith, Steinhaus, Oster and Bartell in production, methods for marketing and selling to insurance brokers, as well as specific approaches to pricing insurance products sold by MAXIMUM.

11.     Also on or about November 8, 2010, MAXIMUM entered into Employment Agreement, Confidentiality/Non-Solicitation Agreements (collectively, the "Agreements") with defendants Smith, Steinhaus, Oster and Bartell. Attached hereto as Group Exhibit A are true and correct copies of the Agreements.

12.     In their roles at MAXIMUM, defendants Smith, Steinhaus, Oster and Bartell were responsible for marketing and selling to agents, production, sales, servicing accounts and attending conferences, meetings, and insurance carrier events on behalf of MAXIMUM, strengthening and maintaining MAXIMUM clients and relationships at these events.

### i. Restrictions in the Agreements

13.     Paragraphs 6, 7 and 8 of the Agreements placed the following non-solicitation and confidentiality restrictions on defendants Smith, Steinhaus, Oster and Bartell:

6.     <u>Non-Solicitation Covenant.</u>

A.     The Employee acknowledges that the Company brokers, markets, sells and provides insurance and insurance related products to customers throughout the United States and that the Employee will be called upon to service customers located in the United States, regardless of the Employee's office location. Accordingly, the Employee covenants he will not during employment or at any time within two years after termination of employment, whether acting alone or in conjunction with another person or entity, **call upon, solicit, negotiate, arrange, provide or sell insurance or insurance-related products of any kind to any customer or actively solicited prospective customer of the company** located in the United States with which the Employee had direct contact or who was a customer or actively solicited prospective customer of the Company in which Employee was employed. This limitation only applies to such customers or actively solicited prospective customers of the Company at any time during the twelve (12) months prior to the termination of Employee's employment.

7.     <u>Non-Recruitment Provision</u>. Employee agrees that he will not, both **during employment** and for a period of one year following the termination of his employment, either alone or in conjunction with any other person or entity, **solicit, induce, encourage or recruit any employee of Company to leave the employ of Company**.

8.     <u>Trade Secrets Covenant</u>.

A.     (1)     Employee recognizes and acknowledges that through his orientation and specialized training programs with the Company, both formal and informal, and thereafter through his association with the Company, he will have access to Trade Secret-Confidential Information of a technical or business nature relating to the Company's business which is not known to the insurance agency and brokerage industry at large and is a unique and valuable asset to Company.

(2)     "Trade Secret-Confidential Information" is defined to include, without limitation, specialized business methods, techniques, plans and know-how relating to the business of the Company; advertising and marketing materials and concepts; customer information, including without limitation mailing lists, customer lists, rolodexes, customer files, supplier lists, non-public information concerning present, past or potential customers and suppliers (names, addresses, policy expiration dates, policy numbers, underwriters, coverage information, underwriting information, etc.), and methods for developing and maintaining business relationships with customers and prospects; procedural manuals; employee training and review programs and techniques; personnel data of the Company; the Company's electronic data; pricing structures, policies, practices or

4

methods; and methods or practices of obtaining or doing business used by the Company. Trade Secret-Confidential Information also includes any information that is marked "Confidential," any information which Employee has been told is confidential or which he might reasonably expect the Company to regard as confidential, any information given to the Company in confidence by any of the Company's clients, customers or vendors, and any information derived from Company's Trade Secret-Confidential Information. Employee agrees that any information stored in any computer software or hardware, electronic storage devices or electronic data communication devices assigned to Employee by the Company belongs to the Company.

(3) Employee recognizes that this Trade Secret-Confidential Information constitutes a valuable and unique asset of the Company, developed and perfected over considerable time and at substantial expense to the Company. **During his employment and after the termination of employment, the Employee shall not disclose, without the written consent of the Company, to any person, film, partnership, association or corporation such Trade Secret-Confidential Information that came into his possession while in the employ of the Company; or otherwise use such Trade Secret-Confidential Information not for the benefit of the Company but for his own benefit or the benefit of another**, and employee agrees to hold such Trade Secret-Confidential Information in trust for the sole benefit of the Company. A breach of this provision during employment shall be grounds for immediate termination of employment.

B.      Upon leaving the employ of the Company for any reason, the Employee shall not, for the direct or indirect benefit of himself or another, (i) take with his, without the written consent of the Company, any lists of Company customers or potential customers or data relating to insurance policies or insurance products maintained by, needed by or otherwise pertaining to such customers or potential customers, rolodexes, letters, other documents, computer software, computer programs/products, electronically stored data, recordings, video tapes or copies of any of the forgoing, or any other Trade-Secret-Confidential Information relating to the Company; or (ii) reconstruct the same or similar information from memory or from some other source associated with the Company. All records, files, materials, lists and other confidential information that Employee obtains during the course of his employment with the Company are proprietary and shall remain the exclusive property of the Company, and Employee shall return any documents, electronic storage media and devices and/or other materials containing such confidential information upon Employee's termination, or otherwise at the Company's request.

C.      Employee agrees that all intellectual property or products developed during his employment is work for hire, which was performed by the employee in the scope of his employment. The Company shall retain proprietary rights, as provided by law, to any and all intellectual property, computer programs and

> software or any computer-related products developed by Employee during or as a result of Employee's employment, with Company. Employee agrees to assign any and all interest in such intellectual property or products to Company and Employee agrees that Employee will execute such relevant documents as may be necessary to perfect Company's interest in such intellectual property or products.

*See* Group Exhibit A. (emphasis added).

14. Section 9 of the Agreement provides the following remedies:

> 9. <u>Breach of Covenant.</u> In the event of a breach or anticipatory breach by Employee of the provisions of prior Sections 6, 7, and 8, it is agreed that the terms of these Sections may be enforced by an injunction restraining Employee from the commission of such breach (without the necessity of posting a bond or other security) and the Company shall have the right to pursue any other remedies available for such breach or threatened breach, including the recovery of money damages. Employee further agrees to indemnify and hold Company harmless for its costs, attorneys' fees and expenses incurred in enforcing the provisions of the prior Sections 6, 7, and 8.

*See* Group Exhibit A.

## D. MAXIMUM's Confidential Information

15. In connection with its business, MAXIMUM has developed and maintained, at considerable effort and expense, the Confidential Information relating to its insurance brokerage and underwriting operations that provides MAXIMUM a competitive edge, including information as to all the submission dates of the named insureds, the carriers, the agents, the commissions and MAXIMUM's revenue. MAXIMUM's Confidential Information includes, but is not limited to:

a. specialized business methods, techniques, plans and know-how relating to the business of the Company; advertising and marketing materials and concepts;

b. customer information, including without limitation mailing lists, customer lists, rolodexes, customer files, supplier lists, non-public information concerning present, past or potential customers and suppliers (names, addresses, policy expiration dates, policy numbers, underwriters, coverage information, underwriting information, etc.),

and methods for developing and maintaining business relationships with customers and prospects;

c.  procedural manuals;

d.  employee training and review programs and techniques;

e.  personnel data of the Company;

f.  the Company's electronic data;

g.  pricing structures, policies, practices or methods; and,

h.  methods or practices of obtaining or doing business used by the Company.

16.    The Confidential Information is essential to the success and continued success of MAXIMUM.  It represents the investment, at a minimum, of hundreds of thousands of dollars in time and expense and has a value well in excess of One Million Dollars ($1,000,000).

17.    MAXIMUM has invested considerable time, effort, and expense in establishing and developing the Confidential Information, and in developing information concerning its customers and potential customers.  Each year, MAXIMUM spends hundreds of thousands of dollars maintaining their customer relationships and developing their Confidential Information.

18.    The Confidential Information gives MAXIMUM a competitive advantage not enjoyed by other persons who do not possess the Confidential Information. It is not generally known outside MAXIMUM, and access to items of Confidential Information is limited to select groups of individuals.

19.    The Confidential Information would be extremely difficult to independently develop or create, if even possible at all. It could not be acquired from MAXIMUM.

20.     MAXIMUM's success in this highly competitive business is dependent upon a number of factors, including the Confidential Information that MAXIMUM has developed over the years through the expenditure of substantial time and resources.

21.     The Confidential Information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use.

22.     MAXIMUM used, and continues to use, reasonable and diligent efforts to maintain and protect its Confidential Information, including (a) limiting access to certain databases on its computer systems to certain employees, (b) limiting access to its computer system on a password protected basis, (c) limiting access to who can view what Confidential Information, (d) having a specific policy regarding the non-disclosure of confidential business information, and (e) requiring employees who learn or have access to Confidential Information to sign non-disclosure/confidentiality agreements. *See* Group Exhibit A.

23.     Moreover, MAXIMUM's Employee Handbook, a copy of which was given to and acknowledged by defendants Smith, Steinhaus, Oster and Bartell, requires that:

> To ensure the security of company information, authorized employees may be required to have an anti-virus and mobile device management (MDM) software installed on their personal mobile devices. This MDM software will store all company-related information, including calendars, emails and other company-related applications in one area that is password-protected and secure. The IT department must install this software prior to using the personal device for work purposes. Employees may store company-related information only in this area. **Employees may not use cloud-based apps or backup that allows company-related data to be transferred to unsecure parties.** Due to security issues, personal devices may not be synchronized to other devices in employees' homes. Making any modifications to the device hardware or software beyond authorized and routine installation updates is prohibited unless approved by IT. **Employees may not use unsecure Internet sites.**

8

Attached hereto as Exhibit B is the relevant portion of MAXIMUM's Employee Handbook.

24.     In the commission of their responsibilities, defendants Smith, Steinhaus, Oster and Bartell were exposed to MAXIMUM's confidential information and trade secrets, including but not limited to all information related to customer information, all the submission dates of the named insureds, the carriers, the agents, the commissions and MAXIMUM's revenue.

## E.  Events Surrounding Defendants Smith, Steinhaus, Oster and Bartell's Breach of Contract and Tortious Conduct

25.     Defendants Smith, Steinhaus, Oster and Bartell transferred MAXIMUM's Confidential Information to a shared Google "g:" drive.  Attached hereto as Exhibit C is a true and correct copy of Smith's February 17, 2014, email to Bartell, Steinhaus and Oster specifically directing them to utilize the g: drive.

26.     Such sharing of Confidential Information outside of MAXIMUM's network was in direct contravention of MAXIMUM's policy.  *See* Exhibit B.

27.     On January 6, 2016, defendant Smith emailed Danny Kaufman ("djkaufman") and Denis Brady of defendant Burns & Wilcox regarding meeting them both.  A true and correct copy of defendant Smith's January 6, 2016, email is attached hereto as Exhibit D.  In his January 6, 2016, email, defendant Smith stated, "The only area where I don't have much flexibility is bringing all my team.  There are 3 younger guys on my team and me (31, 34, 35 yrs).  I can't leave anyone behind.  I have a huge personal investment in their future success.  Its (*sic*) been one of the things that has kept me going at Maximum."  *See* Exhibit D.  Upon information and belief, defendant Smith is referencing defendants Steinhaus, Oster and Bartell as "his team."

9

28.     On March 29, 2016, in an email between, in relevant part, defendant Smith and Denis Brady of defendant Burns & Wilcox, defendant Smith confirmed that he accepted defendant Burns & Wilcox's offer of employment on March 23, 2016.  A true and correct copy of defendant Smith's March 29, 2016, email is attached hereto as Exhibit E.  Defendant Smith's email also states that James Baker "mentioned that I was the only one not showing the electronic acceptance."  *See* Exhibit E.  Upon information and belief, James Baker was juxtaposing defendant Smith to defendants Steinhaus, Oster and Bartell as those who had electronically accepted the offer by March 29, 2016.

29.     Per the March 29, 2016, email, defendant Smith's start date with Burns & Wilcox was set for April 4, 2016.  *See* Exhibit E.

30.     On Saturday, April 2, 2016, at 6:42 am, defendant Smith emailed defendant Steinhaus and asked him for the "final list" of "active policies with no agency contact."  A true and correct copy of defendant Smith's April 2, 2016, email is attached hereto as Exhibit F. Defendant Steinhaus provided him with a spreadsheet (dated March 29, 2016) of 424 names and policy numbers.[1]

31.     On April 4, 2016, defendants Smith, Steinhaus, Oster and Bartell, resigned their employment with MAXIMUM.

32.     In the weeks surrounding their March, 2016, acceptance of employment with defendant Burns & Wilcox and leading up to their April 4, 2016, resignation, defendants Smith, Steinhaus, Oster and Bartell added Confidential Information to their shared Google g: drive.  For example,

    a.   on March 11, 2016, defendant Oster uploaded four pdf files of, upon information and belief, Confidential Information to the g: drive;

---

[1] Maximum will produce the spreadsheet upon the entry of a protective order and for "attorneys' eyes only."

b. on March 16, 2016, defendant Oster uploaded another three pdf files;

c. on March 18, 2016, defendant Bartell uploaded an excel spreadsheet entitled "Tower SOV 3.7.16;"

d. on March 22, 2016, defendant Oster uploaded a pdf filed entitled "Deming Quote.pdf;"

e. on March 24, 2016, defendant Oster uploaded two pdf files, both named "Attachment;"

f. on March 28, 2016, defendant Oster uploaded two pdf files relating to "Junkin." Upon information and belief, "Junkin" relates to "Junkin Safety Appliance Co. Inc.," a named insured with whom Maximum does business. Junkin Safety Appliance Co., Inc. was a MAXIMUM customer included on the spreadsheet referenced in paragraph 34 above.

A true and correct copy of the screenshot of the g: drive from defendant Smith's computer is attached hereto as Exhibit G. Defendants Smith, Steinhaus, Oster and Bartell then attempted to destroy the data that resided on the hard drives of those MAXIMUM provided computers. MAXIMUM is in the process of forensically obtaining the data that these defendants attempted to destroy.

33.    By wrongfully utilizing a shared Google g: drive, defendants Smith, Steinhaus, Oster and Bartell are able to log into their personal Gmail accounts after resigning from MAXIMUM and commencing their employment with Burns & Wilcox, and they, along with defendant Burns & Wilcox, still have access to all of the Confidential Information they had unloaded to the Google g: drive. The misappropriation is continuing and ongoing.

34.     On April 15, 2016, MAXIMUM received a "broker of record" change letter for one of its customers, ProAct Services Corporation.   A true and correct copy of the April 15, 2016, "broker of record" change letter is attached hereto as Exhibit H.  ProAct Services Corporation was a MAXIMUM customer included on the spreadsheet referenced in paragraph 34 above.

## G.  Burns & Wilcox's Tortious Conduct

35.     Defendant Burns & Wilcox knew, was aware, or was on notice that defendants Smith, Steinhaus, Oster and Bartell were bound by the Agreements with MAXIMUM, including the Trade Secrets Covenant and Non-Recruitment Provision, when it made the decision to hire defendants Smith, Steinhaus, Oster and Bartell.  On March 24, 2016, Denis Brady of defendant Burns & Wilcox emailed defendant Smith and stated that defendant Burns & Wilcox "will indemnify you so long as you are not in breach of any of your contractual obligations."  A true and correct copy of Denis Brady's March 24, 2016, email is attached hereto as Exhibit I.  Clearly defendant Burns & Wilcox was aware of the "contractual obligations."

36.     Upon discovering that defendants Burns & Wilcox hired defendants Smith, Steinhaus, Oster and Bartell, MAXIMUM notified defendant Burns & Wilcox that defendants Smith, Steinhaus, Oster and Bartell were subject to the Agreements and their conduct was a violation of Sections 6, 7 and 8 of the Agreements.  True and correct copies of the April 4, 2016, letter from MAXIMUM to defendants Smith, Steinhaus, Oster and Bartell and defendant Burns & Wilcox are attached hereto as Group Exhibit J.

37.     To date, defendant Burns & Wilcox continue to employ defendants Smith, Steinhaus, Oster and Bartell, and to continue to utilize and benefit from MAXIMUM's Confidential Information.

# Count 1: Breach of Contract by Smith

1-37. For ¶ 1-37 of Count 1 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-37 applicable to all counts.

38. The foregoing actions by Smith are continuing breaches of Sections 6, 7, and 8 of the Agreement.

39. MAXIMUM has no adequate remedy at law and is suffering irreparable injury for Smith's breaches of Sections 6, 7 and 8 of the Agreement.

40. Section 9 authorizes MAXIMUM to seek an injunction restraining Smith from breaching the nonsolicitation, non-recruitment and trade secrets provisions, for money damages, and to for reasonable attorneys' fees.

41. MAXIMUM fully performed all of its material obligations under the Agreement.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Adrian Smith, including:

A.   A preliminary and permanent injunction prohibiting Smith and all those acting in concert with him from continuing to breach Section 6, 7 and 8 the Agreement;

B.   An award of MAXIMUM's actual damages for breach of Section 6, 7 and 8 of the Agreement; and,

C.   An award of attorneys' fees pursuant to Section 9 of the Agreement.

# Count 2: Breach of Contract by Steinhaus

1-41. For ¶ 1-41 of Count 2 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-41 applicable to all counts.

42. The foregoing actions by Steinhaus are continuing breaches of Sections 6, 7, and 8 of the Agreement.

43. MAXIMUM has no adequate remedy at law and is suffering irreparable injury for Steinhaus's breaches of Sections 6, 7 and 8 of the Agreement.

44.     Section 9 authorizes MAXIMUM to seek an injunction restraining Steinhaus from breaching the nonsolicitation, non-recruitment and trade secrets provisions, for money damages, and to for reasonable attorneys' fees.

45.     MAXIMUM fully performed all of its material obligations under the Agreement.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Erich Steinhaus, including:

A.     A preliminary and permanent injunction prohibiting Steinhaus and all those acting in concert with him from continuing to breach Section 6, 7 and 8 the Agreement;

B.     An award of MAXIMUM's actual damages for breach of Section 6, 7 and 8 of the Agreement; and,

C.     An award of attorneys' fees pursuant to Section 9 of the Agreement.

## Count 3:  Breach of Contract by Oster

1-45.   For ¶ 1-45 of Count 3 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-45 applicable to all counts.

46.     The foregoing actions by Oster are continuing breaches of Sections 6, 7, and 8 of the Agreement.

47.     MAXIMUM has no adequate remedy at law and is suffering irreparable injury for Oster's breaches of Sections 6, 7 and 8 of the Agreement.

48.     Section 9 authorizes MAXIMUM to seek an injunction restraining Oster from breaching the nonsolicitation, non-recruitment and trade secrets provisions, for money damages, and to for reasonable attorneys' fees.

49.     MAXIMUM fully performed all of its material obligations under the Agreement.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Jody Oster, including:

14

A.    A preliminary and permanent injunction prohibiting Oster and all those acting in concert with him from continuing to breach Section 6, 7 and 8 the Agreement;

B.    An award of MAXIMUM's actual damages for breach of Section 6, 7 and 8 of the Agreement; and,

C.    An award of attorneys' fees pursuant to Section 9 of the Agreement.

## Count 4:  Breach of Contract by Bartell

1-49.    For ¶ 1-49 of Count 4 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-49 applicable to all counts.

50.    The foregoing actions by Bartell are continuing breaches of Sections 6, 7, and 8 of the Agreement.

51.    MAXIMUM has no adequate remedy at law and is suffering irreparable injury for Bartell's breaches of Sections 6, 7 and 8 of the Agreement.

52.    Section 9 authorizes MAXIMUM to seek an injunction restraining Bartell from breaching the nonsolicitation, non-recruitment and trade secrets provisions, for money damages, and to for reasonable attorneys' fees.

53.    MAXIMUM fully performed all of its material obligations under the Agreement.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Stephen Bartell, including:

A.    A preliminary and permanent injunction prohibiting Bartell and all those acting in concert with him from continuing to breach Section 6, 7 and 8 the Agreement;

B.    An award of MAXIMUM's actual damages for breach of Section 6, 7 and 8 of the Agreement; and,

C.    An award of attorneys' fees pursuant to Section 9 of the Agreement.

## Count 5:  Misappropriation of Trade Secrets by Smith

1-53.   For ¶ 1-53 of Count 5 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-53 applicable to all counts.

54.     MAXIMUM's Confidential Information is the result of years of work and substantial expenditure of time, effort and expense and constitutes trade secrets within the meaning of applicable law, including but not limited to within the meaning of the Illinois Trade Secrets Act.

55.     The trade secrets acquired and developed by MAXIMUM derive independent economic value from the fact that they are not generally known to, nor readily ascertainable by proper means by, the public.

56.     Upon information and belief, Smith has used and misappropriated MAXIMUM's trade secrets, and/or there is a substantial threat that Smith will disclose and use MAXIMUM's trade secrets, as defined under applicable law.

57.     MAXIMUM has not and does not consent, either expressly or by implication, to the use or disclosure by Smith of any Confidential Information or trade secrets.

58.     MAXIMUM is likely to succeed in pursuit of this injunctive relief under applicable law.

59.     The harm which MAXIMUM will suffer if Smith is not enjoined far outweighs any harm Smith would suffer from the issuance of injunctive relief.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Adrian Smith, including:

A.      A preliminary and permanent injunction prohibiting Smith and all those acting in concert with him from using or disclosing to any person any Confidential Information and trade secrets of MAXIMUM and from continuing to breach the Agreement;

B.      An award of MAXIMUM's actual damages for breach of the Agreement;

C.     Smith be ordered immediately to preserve and return to MAXIMUM any Confidential Information of MAXIMUM, and all copies thereof, in whatever form stored or maintained, including any list or compilation of customer information maintained by Smith and preserve all electronic information in his possession or control pertaining to MAXIMUM or his current or prospective employment with Burns & Wilcox;

D.     An award of attorneys' fees pursuant to Section 9 of the Agreement; and,

E.     MAXIMUM be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an equitable accounting for all profits lost by MAXIMUM or reaped by Smith and/or his current employer, Burns & Wilcox and an accounting as to all persons to whom the Confidential Information, or any portion thereof, has been disclosed by Smith.

## Count 6: Misappropriation of Trade Secrets by Steinhaus

1-59.     For ¶ 1-59 of Count 6 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-59 applicable to all counts.

60.     MAXIMUM's Confidential Information is the result of years of work and substantial expenditure of time, effort and expense and constitutes trade secrets within the meaning of applicable law, including but not limited to within the meaning of the Illinois Trade Secrets Act.

61.     The trade secrets acquired and developed by MAXIMUM derive independent economic value from the fact that they are not generally known to, nor readily ascertainable by proper means by, the public.

62.     Upon information and belief, Steinhaus has used and misappropriated MAXIMUM's trade secrets, and/or there is a substantial threat that Steinhaus will disclose and use MAXIMUM's trade secrets, as defined under applicable law.

63.     MAXIMUM has not and does not consent, either expressly or by implication, to the use or disclosure by Steinhaus of any Confidential Information or trade secrets.

64. MAXIMUM is likely to succeed in pursuit of this injunctive relief under applicable law.

65. The harm which MAXIMUM will suffer if Smith is not enjoined far outweighs any harm Steinhaus would suffer from the issuance of injunctive relief.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Erich Steinhaus, including:

A. A preliminary and permanent injunction prohibiting Steinhaus and all those acting in concert with him from using or disclosing to any person any Confidential Information and trade secrets of MAXIMUM and from continuing to breach the Agreement;

B. An award of MAXIMUM's actual damages for breach of the Agreement;

C. Steinhaus be ordered immediately to preserve and return to MAXIMUM any Confidential Information of MAXIMUM, and all copies thereof, in whatever form stored or maintained, including any list or compilation of customer information maintained by Smith and preserve all electronic information in his possession or control pertaining to MAXIMUM or his current or prospective employment with Burns & Wilcox;

D. An award of attorneys' fees pursuant to Section 9 of the Agreement; and,

E. MAXIMUM be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an equitable accounting for all profits lost by MAXIMUM or reaped by Steinhaus and/or his current employer, Burns & Wilcox and an accounting as to all persons to whom the Confidential Information, or any portion thereof, has been disclosed by Steinhaus.

## Count 7: Misappropriation of Trade Secrets by Oster

1-65. For ¶ 1-65 of Count 7 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-65 applicable to all counts.

66. MAXIMUM's Confidential Information is the result of years of work and substantial expenditure of time, effort and expense and constitutes trade secrets within the

meaning of applicable law, including but not limited to within the meaning of the Illinois Trade Secrets Act.

67.     The trade secrets acquired and developed by MAXIMUM derive independent economic value from the fact that they are not generally known to, nor readily ascertainable by proper means by, the public.

68.     Upon information and belief, Oster has used and misappropriated MAXIMUM's trade secrets, and/or there is a substantial threat that Oster will disclose and use MAXIMUM's trade secrets, as defined under applicable law.

69.     MAXIMUM has not and does not consent, either expressly or by implication, to the use or disclosure by Oster of any Confidential Information or trade secrets.

70.     MAXIMUM is likely to succeed in pursuit of this injunctive relief under applicable law.

71.     The harm which MAXIMUM will suffer if Oster is not enjoined far outweighs any harm Oster would suffer from the issuance of injunctive relief.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Jody Oster, including:

A.     A preliminary and permanent injunction prohibiting Oster and all those acting in concert with him from using or disclosing to any person any Confidential Information and trade secrets of MAXIMUM and from continuing to breach the Agreement;

B.     An award of MAXIMUM's actual damages for breach of the Agreement;

C.     Oster be ordered immediately to preserve and return to MAXIMUM any Confidential Information of MAXIMUM, and all copies thereof, in whatever form stored or maintained, including any list or compilation of customer information maintained by Oster and preserve all electronic information in his possession or control pertaining to MAXIMUM or his current or prospective employment with Burns & Wilcox;

D.     An award of attorneys' fees pursuant to Section 9 of the Agreement; and,

E.     MAXIMUM be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an equitable accounting for all profits lost by MAXIMUM or reaped by Oster and/or his current employer, Burns & Wilcox and an accounting as to all persons to whom the Confidential Information, or any portion thereof, has been disclosed by Oster.

## Count 8:  Misappropriation of Trade Secrets by Bartell

1-71.   For ¶ 1-71 of Count 8 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-71 applicable to all counts.

72.     MAXIMUM's Confidential Information is the result of years of work and substantial expenditure of time, effort and expense and constitutes trade secrets within the meaning of applicable law, including but not limited to within the meaning of the Illinois Trade Secrets Act.

73.     The trade secrets acquired and developed by MAXIMUM derive independent economic value from the fact that they are not generally known to, nor readily ascertainable by proper means by, the public.

74.     Upon information and belief, Bartell has used and misappropriated MAXIMUM's trade secrets, and/or there is a substantial threat that Bartell will disclose and use MAXIMUM's trade secrets, as defined under applicable law.

75.     MAXIMUM has not and does not consent, either expressly or by implication, to the use or disclosure by Bartell of any Confidential Information or trade secrets.

76.     MAXIMUM is likely to succeed in pursuit of this injunctive relief under applicable law.

77.     The harm which MAXIMUM will suffer if Bartell is not enjoined far outweighs any harm Bartell would suffer from the issuance of injunctive relief.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Stephen Bartell, including:

A.   A preliminary and permanent injunction prohibiting Bartell and all those acting in concert with him from using or disclosing to any person any Confidential Information and trade secrets of MAXIMUM and from continuing to breach the Agreement;

B.   An award of MAXIMUM's actual damages for breach of the Agreement;

C.   Bartell be ordered immediately to preserve and return to MAXIMUM any Confidential Information of MAXIMUM, and all copies thereof, in whatever form stored or maintained, including any list or compilation of customer information maintained by Bartell and preserve all electronic information in his possession or control pertaining to MAXIMUM or his current or prospective employment with Burns & Wilcox;

D.   An award of attorneys' fees pursuant to Section 9 of the Agreement; and,

E.   MAXIMUM be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an equitable accounting for all profits lost by MAXIMUM or reaped by Bartell and/or his current employer, Burns & Wilcox and an accounting as to all persons to whom the Confidential Information, or any portion thereof, has been disclosed by Bartell.

## Count 9: Tortious Interference with Agreement by Burns & Wilcox

1-77.   For ¶ 1-77of Count 9 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-77 applicable to all counts.

78.   In engaging in the foregoing conduct, Burns & Wilcox intentionally interfered with MAXIMUM's rights under Sections 6, 7 and 8 of the Agreements with defendants Smith, Steinhaus, Oster and Bartell by knowingly employing or otherwise associating with them to solicit customers, misappropriate MAXIMUM's Confidential Information, and induce MAXIMUM's employees to be disloyal and terminate their employment to work for a competing business.

79.     As a legal and proximate cause of this intentional interference, MAXIMUM has been damaged and will continue to be damaged in an amount that currently cannot be reasonably calculated.

80.     Burns & Wilcox conduct is willful and egregious.

Therefore, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief against defendant Burns & Wilcox, Ltd., including:

A.     A preliminary and permanent injunction prohibiting Burns & Wilcox and all those acting in concert with them, from (i) employing, in any capacity, Smith, Steinhaus, Oster and Bartell, and (ii) interfering with and diverting any business from MAXIMUM.

B.     An award of MAXIMUM's damages.

C.     Disgorgement of, or constructive trust on, Burns & Wilcox's wrongful profits.

D.     An award to MAXIMUM of punitive damages.

## Count 10: Tortious Interference with Reasonable Expectation Of Economic Advantage by Burns & Wilcox

1-80.   For ¶¶ 1-80 of Count 10 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-80 of the Complaint.

81.     MAXIMUM had a reasonable expectation that it would continue to employee Smith, Steinhaus, Oster and Bartell to assist in its efforts to maintain and expand its client relationships.

82.     In engaging in the above conduct, Burns & Wilcox intentionally interfered with MAXIMUM's expectations by employing or otherwise associating with and employing Smith, Steinhaus, Oster and Bartell to assist in their efforts to maintain and expand its client relationships.

83. As a legal and proximate cause of this intentional interference, MAXIMUM has been damaged and will continue to be damaged in an amount that currently cannot be reasonably calculated.

84. Burns & Wilcox's conduct is willful and egregious.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief, including:

A. A preliminary and permanent injunction prohibiting Burns & Wilcox and all those acting in concert with them, from (i) employing, in any capacity, Smith, Steinhaus, Oster and Bartell, and (ii) interfering with and diverting any business from MAXIMUM.

B. An award of MAXIMUM's damages.

C. Disgorgement of, or constructive trust on, Burns & Wilcox's wrongful profits.

D. An award to MAXIMUM of punitive damages.

## Count 11: Violation of Computer Fraud and Abuse Act by Smith, Steinhaus, Oster and Bartell

1-84. For ¶¶ 1-84 of Count 11 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-84 of the Complaint.

85. In engaging in the above conduct, defendants Smith, Steinhaus, Oster and Bartell exceeded their authorization in accessing MAXIMUM's computers and wrongfully transferring and destroying data stored on them, which violates the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C).

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief, including an award of MAXIMUM's damages.

## Count 12: Civil Conspiracy Against All Defendants

1-85.   For ¶¶ 1-85 of Count 12 of the Complaint, MAXIMUM repeats the preceding ¶¶ 1-85 of the Complaint.

86.   In engaging in the above conduct, the defendants have conspired to commit various torts against MAXIMUM with the intent to misappropriate its customer and employee relationships.

87.   In engaging in the foregoing conduct, the defendants acted with actual malice to MAXIMUM.

THEREFORE, plaintiff MAXIMUM Independent Brokerage, LLC prays for all appropriate relief, including:

A.   An award of MAXIMUM's damages.

B.   Disgorgement of, or constructive trust on, Burns & Wilcox's wrongful profits.

C.   An award to MAXIMUM of punitive damages.

MAXIMUM Independent Brokerage, LLC

By:   _s / Susan Lorenc_____
        One of Its Attorneys

Susan Lorenc, Esq. (ARDC #6278471)
David Kaufman, Esq. (ARDC #6204545)
Thompson Coburn LLP
55 E. Monroe, 37th Floor
Chicago, IL 60603
(312) 580-2324