**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAXIMUM INDEPENDENT BROKERAGE, LLC, an Illinois limited liability company, | ) ) ) | No. 16 C 5548 |
| Plaintiff, | ) ) ) | |
| | ) | Honorable Samuel Der-Yeghiayan |
| vs. | ) ) | Magistrate Judge Susan E. Cox |
| ADRIAN SMITH, ERICH STEINHAUS, JODY OSTER, STEPHEN BARTELL, and BURNS & WILCOX, LTD., a Michigan corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**RULE 12(B)(6) MOTION TO DISMISS AND**
**RULE 12(B)(1) MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

Individual defendants, Adrian Smith, Erich Steinhaus, Jody Oster and Stephen Bartell (the "Individual Defendants"), through their counsel, provide the following Memorandum of Law in Support of their 12(b)(6) and 12(b)(1) motion to dismiss Plaintiff's Complaint for Injunctive and Other Relief (Doc.#1, hereafter the "Complaint" or "Compl." ) and state as follows.

The Individual Defendants seek to dismissal of Count 11 of the Complaint regarding the Computer Fraud and Abuse Act, pursuant to F.R.C.P. 12(b)(6), and to dismiss the Complaint in its entirety, pursuant to F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction.

The Individual Defendants also move, pursuant to F.R.C.P. 12(b)(6) to dismiss Counts 1, 2, 3 and 4 regarding any claim as to violation of Sections 6 and 8 of their respective Employment Agreements because the restrictions in those agreements are overbroad and unenforceable.

## I.     STANDARD ON MOTION TO DISMISS

The purpose of a motion to dismiss under Rule 12(b)(1) and (6) is to test the legal sufficiency of the complaint.  *See, Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990).   As the Supreme Court has noted, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,  127 S.Ct. 1955, 1974 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) *citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

In reviewing the sufficiency  of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, a court accepts the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.  *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011)(emphasis added).   "A pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (citation omitted).

## II.  ARGUMENT

The Complaint fails to state any credible cause of action under federal law and the Court should dismiss the lone federal count, and dismiss the case for lack of subject matter jurisdiction.  Most of the other state law counts also warrant dismissal, if the Court is inclined to even review those counts.  Plaintiff's strained attempt to plead into Federal Court should be rejected.

A.    **Rule 12(b)(6) and 12(b)(1) Motion to Dismiss Count 11, and Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

1.    **Allegations As To The CFAA Claim.**

The twelve-count Complaint filed by Plaintiff Maximum Insurance Brokerage, LLC ("Maximum") contains eleven claims arising under state (Illinois) law and one claim in its Count 11, titled Violation of Computer Fraud and Abuse Act ("CFAA") which Maximum admits is the sole basis for Maximum's jurisdiction before this federal court under 28 U.S.C. §1331. (See, Doc.#1, Compl. ¶¶ 7 and 8.)  Maximum's reliance on the CFAA is entirely contrived and must, therefore, fall.  Because no other federal law connection of any sort exists, the dismissal of Count 11 warrants dismissal of this case for lack of subject matter jurisdiction.

Maximum bases federal jurisdiction on Section 1030(a)(2)(C) of the CFAA  (Doc.#1, Compl. ¶85), which section provides:

(a)    Whoever –

(2)    intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains --

(C) information from any protected computer;

shall be punished as provided in subsection (c) of this section.

18 U.S.C. §1030(a)(2)(C).

The allegations in the Complaint relate in large part to information residing in a shared Google "g:" drive (Doc.#1, Compl. ¶25) which Maximum admits was stored "outside of Maximum's network"  (Doc.#1, Compl. ¶26).   As alleged, the Individual Defendants, who were employees of Maximum, transferred information to a shared " Google g:drive" which Maximum claims was confidential (Doc.#1, Compl. ¶25), and at some time prior to their resignation of employment on April 4, 2016 the Individual Defendants "then attempted to destroy the data that resided on the hard drives" of the Maximum provided computers.  (Doc.#1, Compl. ¶32.) Maximum theorizes that by utilizing the shared Google g:drive, the Individual Defendants are

- 3 -

able to log into their personal Gmail accounts after their resignation and gain access to the confidential information they previously unloaded to the g:drive. (Doc.#1, Compl. ¶32.) In Count 11, Maximum then alleges, in conclusory fashion that "[i]n engaging in the above conduct, defendants Smith, Steinhaus, Oster and Bartell exceed their authorization in accessing Maximum's computers and wrongfully transferring and destroying data stored in them, which violates the federal Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(2)(C)." (Doc.#1, Compl. ¶85.)

As described below, the Complaint fails to allege facts that properly invoke the protections afforded under the federal statute. Because there is no other basis for subject matter jurisdiction, this entire case should be dismissed for lack of subject matter jurisdiction.

## 2. The Computer Fraud and Abuse Act Does Not Apply To This Case.

Maximum's attempt to portray the facts as any sort of alleged violation of the Computer Fraud and Abuse Act fails . As the court recognized in *Instant Tech., LLC v. DeFazio*, 40 F.Supp.2d 989, 1018 (N.D.Ill, 2014) (Holderman, J.), the "underlying concern of the [CFAA] is ***damage to data*** and ... the statute was not meant to cover the disloyal employee who walks off with confidential information." (emphasis added); citing *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l,* 616 F.Supp.2d 805, 813 (N.D.Ill.2009) (Hibbler, J.) (quoting *Kluber Skahan & Assocs. v. Cordogan, Clark & Assocs., Inc.,* No. 08 C 1529, 2009 WL 466812, at *8 (N.D.Ill. Feb. 25, 2009) (Zagel, J.)) (internal quotations omitted). Allegations regarding a party's accessing of data are simply insufficient to plead the existence of damage. The mere accessing of data does not meet the definition of damage under the CFAA. *Farmers Ins. Exchange v. The Auto Club Group,* 823 F.Supp.2d 847, 852-53 (ND. Ill. 2011); *Mintel Int'l Group, Ltd. v. Neergeen,* No. 08 C 3939, 2010 WL 145786 at *9 (N.D. Ill. 2010).

Maximum has attempted to parlay bare-bones allegations regarding confidential

- 4 -

information into a cause of action under the CFAA and thereby gain federal jurisdiction. Instead, Count 11 of the Complaint should be dismissed. Courts have recognized that "to state a claim for a violation of the CFAA, a plaintiff must prove: "(1) damage or loss; (2) caused by; (3) a violation of one of the substantive provisions set forth in § 1030(a) and (4) conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V)." *Instant Tech*, 40 F.Supp.2d at 1018. The Complaint here contains no valid allegations regarding "damage to data."

The purely conclusory allegation in Par. 85 regarding "transferring and destroying data" is inconsistent with the allegation in Par. 32 as the Individual Defendants' "attempt" to destroy data that resided on the hard drives and should be disregarded in any event under the 12(b)(6) standard enunciated in *McCauley v. City of Chicago*, above. It is telling that although the events alleged by Maximum regarding any confidential information had to take place prior to April 4, 2016, and Maximum alleges that is in the process of "forensically obtaining the data" that it claims defendants "attempted" to destroy, seven weeks later, in its May 24, 2016 Complaint, it cannot identify or affirmatively allege with any particularity whether any confidential information was actually destroyed. To the contrary, Maximum's own allegations assert that it can forensically obtain any such data.

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.A. § 1030 (e)(11). Additionally, "to prevail on his Computer Fraud and Abuse Act claim, [plaintiff] would have had burden of proving that defendants' actions 'caused [a] loss . . . during any 1-year period . . . aggregating at least $5,000 in value.' " *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) *citing* 18 U.S.C. §1030(c)(4)(A)(i)(I). None of that is alleged here, and

- 5 -

the Individual Defendants assert that it could not be so alleged in good faith. Courts in this district have held that costs "not related to ***computer impairment or computer damages*** are not compensable under the CFAA." *Instant Tech*, 40 Supp.3d at 1019; citing *SBS Worldwide, Inc. v. Potts,* No. 13 C 6557, 2014 WL 499001, at *9 (N.D.Ill. Feb. 7, 2014) (Holderman, J.) (quoting [*Farmers Ins. Exch. v. Auto Club Grp.* 823 F. Supp. 2d 847, 855 (N.D. Ill.2011)(Holderman, J.)]); also citing *Cassetica Software,* 2009 WL 1703015, at *4 ("With respect to 'loss' under the FCAA, other courts have uniformly found that economic costs unrelated to computer systems do not fall within the statutory definition of the term."). In *CustomGuide v. CareerBuilder, LLC,* 813 F.Supp.2d 990, 998 (N.D.Ill.2011) (Holderman, J.), the Court found that plaintiff failed to state a CFAA claim by failing to allege "any facts connecting its purported 'loss' to an interruption of service of its computer systems." Other courts within this district have analyzed "loss" to include costs incurred due to an investigation without regard to whether the investigation pertained to actual disruption of service or impairment of data. See, *Lane v. LeBrocq*, 2016 WL 1271051 (N.D. Ill. March 28, 2016)(Castillo, J.) at *11.

In any event, Maximum's Complaint has not alleged any actual damage or any loss recognized by the CFAA. Maximum never pleads it suffered any monetary loss in excess of $5,000 or otherwise expended any money whatsoever in connection with the alleged "attempted" destruction of supposedly confidential information. In the absence of such an allegation, there is simply no cause of action under the CFAA. *See, Modrowski*, 712 F.3d at 1169-1170. Accordingly, Count 11 of the Complaint should be dismissed in accordance with Rule 12(b)(6).

This case should never have been brought in federal court. There is no diversity between the parties that would qualify for jurisdiction under 28 U.S.C. §1332. The appropriate dismissal

of the CFAA claim in Count 11 removes any federal law connection and the entire Complaint

should be dismissed for lack of subject matter jurisdiction.

**B.      Rule 12(b)(6) Motion to Dismiss Portions of Counts 1, 2, 3 and 4 of the Complaint.**

Counts 1, 2, 3 and 4 of the Complaint allege breaches of contract by each of the four

Individual Defendants.  Each of the underlying contracts (attached as Group Exhibit A to the

Doc.#1, Compl.) contains identical language as to "Non-Solicitation," "Non-Recruitment" and

"Trade Secrets Covenant."   Each of those provisions, drafted by Maximum as part of the

Agreements, is simply unenforceable under Illinois law.[1]

**1.      The So-Called "Non-Solicitation" Provision Is Unreasonably Overbroad And Unenforceable.**

The restrictive covenant in each of the Agreements reads as follows (with emphasis

added):

6.      <u>Non-Solicitation Covenant.</u>

A.      The Employee acknowledges that the Company brokers, markets, sells and provides insurance and insurance related products to customers throughout the United States and that the Employee will be called upon to service customers located in the United States, regardless of the Employee's office location. Accordingly, the Employee covenants he will not during employment or at any time within two years after termination of employment, whether acting alone or in conjunction with another person or entity**, call upon, solicit, negotiate, arrange, provide or sell insurance or insurance-related products of any kind to any customer or actively solicited prospective customer of the company located in the United States with which the Employee had direct contact or who was a customer or actively solicited prospective customer of the Company in which Employee was employed**.  This limitation only applies to such customers or actively solicited prospective customers of the Company at any time during the twelve (12) months prior to the termination of Employee's employment.

Illinois abhors restraints on trade.  *Prairie Eye Center, Ltd. v. Butler,* 305 Ill.App.3d 442,

445 (4th Dist. 1999).   To be valid and enforceable, a restrictive covenant must be reasonable.

*Id.,* 305 Ill.App.3d at 445. A restrictive covenant is reasonable only if the covenant (1) is no

---

[1] Pursuant to Section 11(E) of each of the Agreements, the Agreements "shall be construed in accordance with and governed for all purposes by the law of the State of Illinois."

greater than is required for the protection of a legitimate business interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *Reliable Fire Equipment Co. v. Arredondo,* 2011 IL 111871, ¶ 17, 965 N.E.2d 393. The restrictions imposed by Maximum in its Agreement utterly fail to meet this test.

The Seventh Circuit aptly stated in *Interim Health Care of Northern Illinois, Inc. v. Interim Health Care, Inc.,* 225 F.3d 876, 879 (7th Cir. 2000): "[B]ecause Illinois courts favor competition and frown on restraints on trade, we must strictly construe noncompetition agreements against the party seeking restriction."

A cursory review shows that the restrictions imposed by Maximum on its employees are greater than necessary to protect any legitimate interest of Maximum. The Agreement is therefore unenforceable as an unlawful restraint of trade. For starters, the "Non-Solicitation" provision is inaccurate and deceptive: it is decidedly not limited to solicitation. As the appellate court stated in *Smith, Waters, Kuehn, Burnett & Hughes, Ltd. v. Burnett,* 192 Ill. App. 3d 693 (3d Dist. 1989) *pet. for leave to appeal denied* 132 Ill. 2d 554 (1990), in an employment agreement between a law firm and its shareholder:

> The term "solicit" implies personal petition and importunity addressed to a particular individual to do some particular thing (Black's Law Dictionary 1249 (5th ed. 1979).) Solicitation of legal services, as opposed to advertising, connotes a private communication directed at a person or category of persons known by an attorney to have an immediate potential need for legal services.

*Id.* at 702-03.

Here, the actual language of the Maximum Agreement goes well beyond "solicit" and covers actions by employees to "negotiate, arrange, provide or sell insurance or insurance-related products of any kind." (Doc.#1, Ex. A, ¶6(A).) To use only one example, if an existing "customer" (which is an open-ended term not defined in the Agreements) were to initiate contact with one of the Individual Defendants, that individual defendant could not take any further steps

- 8 -

to provide the customer with <u>any</u> insurance or insurance-related product (also undefined) even though the customer was never solicited.  Placement of the insurance involving the former employee in any way – not involving any solicitation per se --  would still be enough to trip the "non-solicitation" wire.   Section 6 is a disguised <u>non-competition</u> provision that prohibits Maximum's employees from taking any steps on behalf of any "customer or actively solicited prospective customer of the company located in the United States."  The over-reaching nature of the activity restrictions is contrary to Illinois law.   In addition, the scope of the restraint is not limited to insurance or "insurance related products"  which Maximum offers, and would effectively restrain a former employee from engaging in any sale of insurance or other products that have nothing whatsoever to do with Maximum's existing lines of business.

Maximum's restrictive covenant has an extensive <u>geographic</u> scope which includes the entire United States.  In addition, its <u>activity</u> restrictions are overly expansive and unenforceable. In a similar scenario, the court in *Montel Aetnastak, Inc. v. Miessen* , 998 F.Supp.2d 694 (N.D. Ill. 2014) (J. Castillo), granted the defendant's 12(b)(6) motion to dismiss plaintiff's claim for breach of the non-competition clause of the company's employment agreement,  holding the agreement's post-employment restrictive covenant not to compete was unenforceable.  In dismissing the claim, the court noted:

> Moving to the clause's activity restriction, the Seventh Circuit held that in the employment context, "courts ... frown upon an across the board limitation on [an employee's] right to ply his trade." *Bus. Records Corp. v. Lueth,* 981 F.2d 957, 962 (7th Cir.1992). Similarly, Illinois courts are "hesitant to enforce noncompetition agreements that prohibit employees from soliciting or servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed." *Eichmann v. Nat'l Hosp. and Health Care Servs., Inc.,* 308 Ill.App.3d 337, 241 Ill.Dec. 738, 719 N.E.2d 1141, 1147 (1st Dist.1999) . *See also McRand,* 93 Ill.Dec. 471, 486 N.E.2d 1306 at 1315; *Corroon & Black of Ill., Inc. v. Magner,* 145 Ill.App.3d 151, 98 Ill.Dec. 663, 494 N.E.2d 785, 793 (1st Dist.1986); *Jefco Labs., Inc. v. Carroo,* 136 Ill.App.3d 793, 91 Ill.Dec. 513, 483 N.E.2d 999, 1003 (1st Dist.1985).

*Id.* at 717.

The *Montel Aetnastak* case hits upon the substantial flaws in the Maximum covenant. Its prohibitions are unenforceable, because they cover not just customers with which the Individual Defendants had direct contact, but <u>any</u> customer who was a "customer of the Company in which the Employee was employed."[2]   The restrictions imposed by Maximum go even further, restricting its employees from contact with any existing customers of the company <u>and actively solicited  prospective customers</u>.   The notion that an employer can prohibit an employee from contact with such non-existent, <u>future</u> customers was rejected in *Eichmann v. National Hospital & Health Care Services, Inc.*, where the Illinois appellate court found as a matter of law that an employer cannot have a protectable interest in future customers and that such a restriction was clearly an attempt to prevent competition *per se.* 318 Ill.App.3d at 345.

The recent Illinois case of *AssuredPartners, Inc. v. Schmitt,* 2015 IL App (1st) 141863, which involved a wholesale insurance broker, is right on point. There, the appellate court struck down the restrictive covenant that was unnecessarily broad in its coverage. The court found the provisions of the restrictive covenant overbroad because it prohibited the solicitation of customers with which the employees never had contact. Relying on *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.,* 378 Ill.App.3d 437 (1st Dist. 2007):

> "A nonsolicitation clause is only valid if 'reasonably related to the employer's interest in protecting customer relations that its employees developed while working for the employer.' " [*Cambridge Engineering, Inc.]* . at 455  . . . (quoting *Lawrence & Allen,* 292 Ill.App.3d at 138, 226 Ill.Dec. 331, 685 N.E.2d 434). "As a result, courts are reluctant to enforce provisions that prohibit former employees from servicing customers that they never had contact with while working for their original employer." *Id.*

2015 IL App (1st) 141863, ¶38.   In further reliance on *Cambridge Engineering,* the appellate court in *AssuredPartners* stated:

---

[2] The scope of this restriction is drafted to be even more expansive  because each of the Employment Agreements in its introductory paragraph,  define "Company" to include not just Maximum "and all affiliates, subsidiaries and related entities."

- 10 -

We noted that "the nonsolicitation covenant extend[ed] broadly to 'any customer, employee or representative of Employer,' regardless of whether [the employee] had contact with them as a Cambridge employee," and even encompassed past customers and companies that became customers after the employee left. [*Cambridge Engineering]* at 455, 316 Ill.Dec. 445, 879 N.E.2d 512. We ultimately found such a restriction "far broader than necessary to protect Cambridge's interest in preventing [its former employee] from abusing the specific client relationships he built up during his time with the company." *Id.* Accordingly, we found the nonsolicitation covenant unenforceable. *Id.*

Here, we reach the same conclusion as in *Cambridge Engineering.*

*Id.* at ¶¶39, 40

The Maximum restrictions are unenforceable under the rules expressed in

*AssuredPartners* (2015) and *Cambridge Engineering* (2007). As if this were not enough, in its

restrictive covenant, Maximum Independent Brokerage, which "offers insurance brokerage and

underwriting facilities" (Doc.#1, Compl. ¶1), expressly prohibits in its former employees from

not just performing insurance brokerage services, but any activities to sell insurance or

insurance-related products to customers, which would entail the actual sale of insurance to

customers on a retail level. Even though Maximum acts as an insurance broker its restrictions

would also prohibit employees from acting as independent insurance agents.

The cumulative effect of Maximum's overbearing restrictions is to prevent former

Maximum employees from taking any steps to "ply their trade" -- contrary to the clear directives

of the Seventh Circuit, as well as Illinois state courts. Maximum's restrictive covenant is

actually a non-compete which, if enforced by its own language, would significantly prohibit the

Individual Defendants from working not just in the insurance brokerage industry, but even the

insurance business in general. Based on this, the Court should dismiss those portions of Counts

1, 2, 3 and 4 that deal with any attempt to enforce the restrictive covenant in the Maximum

Agreements.

**2.     There Is No Allegation Of Any Solicitation.**

To successfully plead a breach of contract claim, a plaintiff must allege: (1) the existence of a valid, enforceable contract; (2) plaintiff's performance; (3) defendant's breach; and (4) resulting injury to plaintiff. *Applied Indus. Materials Corp. v. Mallinckrodt*, 102 F.Supp. 2d 934, 937 (N.D. Ill. 2000). Here, apart from the lack of validity of the restrictive covenant, there is no allegation of any <u>breach</u> of Section 6 of the Employment Agreements. The only allegation remotely close is Doc.#1, Compl. ¶34 where Maximum describes a broker of record change letter for one of its customers, but no allegation that the Individual Defendants solicited or otherwise caused any such change. Because Maximum has no allegation as to breach, Counts 1, 2, 3 and 4 they further warrant dismissal.

**3.     Maximum's Definition Of "Trade Secrets" Is Also Unreasonably Overbroad And Unenforceable.**

Maximum's Employment Agreements also created its own, hybrid class of information defined as "Trade Secret-Confidential Information." Section 8(A)(1) and (2) of the Agreements recited what Maximum believes is Trade Secret-Confidential Information:

8.     <u>Trade Secrets Covenant.</u>

A.     (1)     Employee recognizes and acknowledges that through his orientation and specialized training programs with the Company, both formal and informal, and thereafter through his association with the Company, he will have access to Trade Secret-Confidential Information of a technical or business nature relating to the Company's business which is not known to the insurance agency and brokerage industry at large and is a unique and valuable asset to Company.

(2)     "Trade Secret-Confidential Information" is defined to include, without limitation, specialized business methods, techniques, plans and know-how relating to the business of the Company; advertising and marketing materials and concepts; customer information, including without limitation mailing lists, customer lists, rolodexes, customer files, supplier lists, non-public information concerning present, past or potential customers and suppliers (names, addresses, policy expiration dates, policy numbers, underwriters, coverage information, underwriting information, etc.), and methods for developing and maintaining business relationships with customers and prospects; procedural manuals; employee training and review programs and techniques; personnel data of the Company; the Company's electronic data; pricing structures, policies, practices or methods; and methods or practices of obtaining or doing business used by the Company. Trade Secret-Confidential Information also includes any information that is marked "Confidential," any information which Employee has been told is confidential or which

- 12 -

he might reasonably expect the Company to regard as confidential, any information given to the Company in confidence by any of the Company's clients, customers or vendors, and any information derived from Company's Trade Secret-Confidential Information. Employee agrees that any information stored in any computer software or hardware, electronic storage devices or electronic data communication devices assigned to Employee by the Company belongs to the Company.

Maximum's definition of confidential information/trade secrets is so broad as to encompass any information that an employee has been told is confidential or is simply marked confidential, as well matters which "he might reasonably expect the Company to regard as confidential" or "methods or practices of obtaining or doing business used by the Company." In short, the Employment Agreements make no effort to limit the scope of such information. It also makes no effort to distinguish between information an Individual Defendant came from Maximum versus information known prior to any association with Maximum. In *AssuredPartners,* the appellate court was confronted with a similarly overbroad definition as to confidential information, which it described as "patently overbroad" and held to be unenforceable. 2015 IL App (1st) 141863, ¶¶46, 48. In particular, the court commented:

> [T]he confidentiality provision in section 2(a) does not merely restrict the dissemination of confidential information; it drastically limits Schmitt's ability to work in the insurance industry by preventing him from using any knowledge that he gained while in plaintiffs' employ, regardless of whether he gained such knowledge, directly or indirectly, *as a result of* his employment.

*Id.* at ¶47. (emphasis in the original.)

In *AssuredPartners* the court was concerned that the information was acquired by the defendant "solely from plaintiffs' businesses, as opposed to the customer relationships that he had established prior to his employment." *Id.* at ¶46. This is an important point because the Complaint fails to allege that the confidential information at issue was solely from Maximum or from prior customer relationships that Individual Defendants had established prior to Maximum. The latter category is clearly not protected.

Because the restrictions as to Trade Secrets-Confidential Information in the Employment

- 13 -

Agreements are not enforceable, the claims in Counts 1, 2, 3 and 4 should be dismissed.

### 4. The Complaint Lacks Any Valid Allegation That Misappropriation Has Taken Place.

As noted at the outset, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Although Maximum recites that "misappropriation is continuing and ongoing," there is no support for that conclusory statement. Maximum describes six instances in March 2016 where some of the Individual Defendants <u>uploaded</u> information to the g:drive, there is no specific allegation that the defendants have accessed that information since their resignations on April 4, 2016, or that there is any manifestation that such information has been used by the Individual Defendants. There is no allegation that the Individual Defendants were involved in the broker of record change letter mentioned in Doc.#1, Compl. ¶34. Maximum has made no apparent inquiries as to whether the Individual Defendants were involved and, apparently believes that this Court should instead draw the erroneous conclusion that the Individual Defendants were the cause (as opposed to, say, Maximum's own failure to service the customer).

Lacking any allegation as to use or misappropriation of any confidential information, the claims as to any breach of Counts 1, 2, 3 and 4 regarding the confidentiality provisions should be dismissed.

- 14 -

### III.  CONCLUSION

This Court's jurisdiction over this state law case is dependent upon the validity of the federal CFAA claim in Count 11.   Count 11 should be dismissed and the Complaint should be dismissed for lack of federal subject matter jurisdiction.  Counts 1, 2, 3 and 4 also separately warrant dismissal as to Sections 6 and 8 of the Employment Agreements, for the reasons stated above.

Respectfully submitted,

Adrian Smith, Erich Steinhaus,
Jody Oster, and Stephen Bartell


By: _____
                    One of Their Attorneys

Daniel J. Fumagalli (#6182648)
dfumagalli@chuhak.com
David J. Tecson (#6198108)
dtecson@chuhak.com
CHUHAK & TECSON, P.C.
30 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
312-444-9300

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that on June 3, 2016, a copy of the foregoing Memorandum of Law was filed electronically.  Notice of this filing will be sent to registered ECF users by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


                          <u>/s/ Daniel J. Fumagalli</u>

2972581.2.15278.60411