**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MAXIMUM INDEPENDENT** | ) | |
| **BROKERAGE, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. 16 C 5548 |
| | ) | |
| **ADRIAN SMITH, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Adrian Smith's (Smith), Defendant Erich Steinhaus' (Steinhaus), Defendant Jody Oster's (Oster), and Defendant Stephen Bartell's (Bartell) (collectively referred to as "Individual Defendants") partial motion to dismiss and Defendant Burns & Wilcox, LTD.'s (B&W) partial motion to dismiss. For the reasons stated below, Individual Defendants' partial motion to dismiss is denied and B&W's partial motion to dismiss is denied.

## BACKGROUND

Plaintiff Maximum Independent Brokerage, LLC (Maximum) allegedly offers insurance brokerage and underwriting facilities to the construction, energy, gaming,

1

healthcare, habitational, manufacturing, and real estate industries. From November 8, 2010 to April 4, 2016, Individual Defendants were employed by Maximum. Smith was employed as a senior vice president, Steinhaus as an account manager, Oster as an assistant vice president, and Bartell as an assistant vice president. The Individual Defendants allegedly signed at-will Employment Agreements (Agreements) with Maximum, which contained a non-solicitation covenant, non-recruitment provision, and trade secrets covenant. (Comp. Par. 11). The Agreements also allegedly contained a breach of covenant provision, which enables Maximum to enforce the terms of the Agreement by an injunction. Maximum alleges that the Individual Defendants violated the Agreement by uploading confidential information, stealing client files, and destroying data on Maximum's network. On April 4, 2016, Individual Defendants allegedly resigned their employment with Maximum. On April 4, 2016, Individual Defendants allegedly became employed by B&W. Maximum alleges that while Individual Defendants were still employed by Maximum, B&W poached the Individual Defendants and induced them to violate the terms of their Agreements. B&W is allegedly an independent wholesale insurance broker and underwriting manager in the environmental, recreation, marine, high net worth, professional, transportation and excess casualty industries.

Maximum includes in its complaint breach of contract claims brought against Individual Defendants (Counts I-IV), misappropriation of trade secret claims brought against Individual Defendants (Counts V-VIII), a tortious interference with agreement claim brought against B&W (Count IV), a tortious interference with

2

reasonable expectation of economic advantage (TIPEA) claim brought against B&W (Count X), claims alleging a violation of Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, brought against Individual Defendants (Count XI), and civil conspiracy claims brought against Individual Defendants and B&W (Count XII). Individual Defendants now move to dismiss Counts I, II, III, IV, and XI pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)). Individual Defendants move to dismiss the complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) for lack of subject matter jurisdiction. B&W moves to dismiss Counts IX, X, and XII pursuant to 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003)(overruled on separate grounds). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.; see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter

jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946. For the purpose of determining subject matter jurisdiction, the court "'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in regards to a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); see also *Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

4

its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

### I. Individual Defendants Motion to Dismiss

#### A. Rule 12(b)(6) Motion to Dismiss

#### 1. Whether Maximum has Stated a Claim Under CFAA

Individual Defendants argue that Maximum's complaint fails to state a valid claim for relief under CFAA. CFAA provides a private right of action, stating that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). To state a claim under CFAA, a plaintiff must only allege "(1) damage or loss; (2) caused by (3) a violation of one of the substantive provisions set forth in § 1030(a), and (4) conduct involving one of the factors of harm set forth in § 1030(c)(4)(A)(i)(I)-(VI)." *Cassetica Software, Inc. v. Computer Sciences Corp.,* 2009 WL 1703015, at *3 (N.D. Ill. 2009); *Motorola, Inc. v. Lemko Corp.,* 609 F.Supp. 2d 760, 765 (N.D. Ill. 2009).

In this case, Maximum alleges a violation of § 1030(a)(2)(c), which provides a remedy against an individual who "[i]ntentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains. . . (c)information

5

from any protected computer." 18 U.S.C. § 1030(a)(2)(c). Individual Defendants do not dispute the allegations that they intentionally accessed Maximum's protected computers. The Individual Defendants contend, however, that Maximum failed to satisfy the "damage or loss" requirement. CFAA defines the two terms, damage and loss, differently.

        a. Whether Maximum Properly Alleges Damage Under CFAA

        Individual Defendants argue that Maximum's complaint lacks sufficient allegations regarding damage to data. CFAA states that "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The Seventh Circuit has found that the statutory requirement of damage was satisfied where the defendant's acts impaired the "integrity or availability of data, a program, or information" on the computer. *Citrin,* 440 F.3d at 419.

        Maximum alleges that Individual Defendants "attempted to destroy the data that resided on the hard drives of those Maximum provided computers." (Compl. Par. 32). Maximum also alleges that they are "in the process of forensically obtaining the data that these defendants attempted to destroy." (Compl. Par. 32). Maximum also alleges that Individual Defendants "exceeded their authority in accessing Maximum's computers and wrongfully transferring and destroying data stored on them, which violates" CFAA. (Compl. Par. 85).

        Maximum is not required to plead specific factual allegations as to how the

6

data was destroyed. *See International Airport Centers, L.L.C. v. Citrin,* 440 F.3d at 420)(stating that a plaintiff is not required to allege the exact method or medium through which the defendant destroyed the data). Maximum has thus properly alleged damage under the CFAA.

### b. Whether Maximum Properly Alleges Loss Under CFAA

Individual Defendants also contend that Maximum has not sufficiently alleged loss. In contrast to damage, "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). To adequately plead a loss under CFAA, the plaintiff has the burden of alleging defendants actions caused the plaintiff "to incur losses of over $5,000 during a one-year period related to damage and security assessments." *Motorola, Inc.,* 609 F.Supp. 2d at 768. Assessing and repairing damage to computers files "qualify as compensable because they are a 'cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted.'" *Patrick Patterson Custom Homes, Inc. v. Bach,* 586 F.Supp. 2d 1026, 1036 (N.D. Ill. 2008).

Neither party disputes that CFAA requires a $5,000 threshold within the one-year period. Individual Defendants argue, however, that Maximum fails to contain

allegations displaying that Maximum exceeded this $5,000 threshold. (Def. P. 6). In response, Maximum provided an affidavit signed by Maximum's CEO, Joseph Messina, alleging that Maximum's investigation and response efforts following this incident has required them to incur more than $3,000 in costs since April 4, 2016. Importantly, the one-year timeline has not elapsed. Drawing all reasonable inferences in favor of Maximum, this court finds that Maximum has sufficiently alleged loss for the purposes of CFAA. Therefore, Individual Defendants' Rule 12(b)(6) motion to dismiss Count XI is denied.

### 2. Maximum's Breach of Contract Claims Against Individual Defendants

The Individual Defendants argue that Maximum failed to state a claim for breach of contract because the Employment Agreements are overbroad and unenforceable. In Illinois, a restrictive covenant will be enforced where "it contains a reasonable restraint and the agreement is supported by consideration." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011). The Illinois Supreme Court has established the factors that must be considered in determining whether the restrictive covenants are reasonable. *Id.* at 397. The *Reliable Fire* rule provides that a covenant is reasonable only if it "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promissee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Id.* at 396. Importantly, the reasonableness of a restrictive covenant is determined "based on the totality of the facts and circumstances of the individual case." *Id.* at

403. Accordingly, "unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record." *Traffic Tech*, 2015 WL 9259544, at *5 (N.D. Ill. 2015). Courts in this district have found that such a fact-based determination is not appropriate at the motion to dismiss stage. *Nortek Products Ltd. v. FNA Grp., Inc.,* 2011 WL 2110043, at *4 (N.D. Ill. 2011); *Restaurant.Com, Inc. v. Savad*, 2008 WL 3992695, at *3 (N.D. Ill. 2008)(holding that whether a restrictive covenant is reasonable is a fact-based determination not appropriate at the motion-to-dismiss stage); *Integrated Genomics, Inc. v. Kyrpides*, 2008 WL 630605, at *6–8 (N.D. Ill. 2008) (same). Individual Defendants argue that the non-solicitation provision and the trade secrets provision of the Agreements are overbroad and unenforceable.

### a. Whether the Non-Solicitation Covenant is Patently Unreasonable

The Individual Defendants argue that the non-solicitation provision is unreasonably overbroad, unenforceable, and fails to maintain any geographic restriction. In addressing the geographic limitations, the Seventh Circuit has held that "[g]enerally, courts will uphold a restriction on competition that is coextensive with the area where the promisee is doing business." *Liautaud v. Liautaud,* 221 F.3d 981, 988 (7th Cir. 2000). Distinguishing "a blanket prohibition on competition and an activity restraint is important because the lack of a geographical restriction does not automatically invalidate a postemployment restraint where the geographical prohibition is qualified by an activity restraint." *Eichman v. Nat'l Hosp. and Health*

9

*Care Services, Inc.,* 719 N.E.2d 1141, 1147 (Ill. App. Ct. 1999). Maximum contends that there is a distinction between a non-solicitation agreement and a non-compete. Maximum argues that a geographical limitation is not necessary if the restrictive covenant only prohibits the employee from engaging in certain activities, such as soliciting his or her former employer's customers. The Individual Defendants argue that the non-solicitation agreement applies to activities beyond solicitation and therefore the clause is overbroad. The agreement states that within two years, the employee shall not "call upon, solicit, negotiate, arrange, provide or sell insurance or insurance-related products of any kind. . ." (Exhibit A, Par. 6). Maximum has shown that the non-solicitation clause is qualified by a reasonable activity restraint. The activities stated in the Agreement are a specific set of activities and are narrowly applied. These activities, therefore, do not arise to the standard of being unreasonably overbroad and unenforceable.

Individual Defendants also argue that Illinois Courts are hesitant to enforce noncompetition agreements that prohibit employees from soliciting customers whom they never had contact with during their employment. Maximum points out, however, that, the non-solicitation agreement states that the "limitation only applies to such customers or actively solicited prospective customers of the Company at any time during the twelve (12) months prior to the termination of Employee's employment." (Compl. Par. 13). This restriction therefore has a reasonable scope as it's only intended to protect Maximum's relationships with customers and customers whom they have recently solicited or have ongoing communications. This provision

10

does not, as Individual Defendants contend, apply to non-existent future customers.

This court recognizes that courts "frown upon an across the board limitation on [an employee's] right to ply his trade." *Bus. Records Corp. v. Lueth,* 981 F.2d 957, 962 (7th Cir. 1992). However, the language contained in the Agreement provides a reasonable scope that is consistent with Illinois law. Since the facts of the case are highly important in determining this issue, the court does not find the prohibition against competition to be patently unreasonable. Thus, the non-solicitation agreement is not overbroad and unenforceable.

### 3. Whether the Trade Secrets Covenant is Enforceable

Individual Defendants argue that Section 8 relating to the Trade Secrets Covenant is unreasonably overbroad and unenforceable. This section of the agreement prohibits the Individual Defendants from disclosing or using the trade secret-confidential information for their own benefit or the benefit of another. The agreement defines Trade Secret-Confidential Information as follows:

> (2) Trade Secret-Confidential Information is defined to include, without limitation, specialized business methods, techniques, plans and know-how relating to the business of the Company; advertising and marketing materials and concepts; customer information, including without limitation mailing lists, customer lists, rolodexes, customer files, supplier lists, non-public information concerning present, past or potential customers and suppliers (names, addresses, policy expiration dates, policy numbers, underwriters, coverage information, underwriting information, etc.), and methods for developing and maintaining business relationships with customers and prospects; procedural manuals; employee training and review programs and techniques; personnel data of the Company; the Company's electronic data; pricing structures, policies, practices or methods;

11

and methods or practices of obtaining or doing business used by the Company. Trade Secret-Confidential Information also includes any information that is marked "Confidential," any information which Employee has been told is confidential or which he might reasonably expect the Company to regard as confidential, any information given to the Company in confidence by any of the Company's clients, customers or vendors, and any information derived from Company's Trade Secret-Confidential Information. Employee agrees that any information stored in any computer software or hardware, electronic storage devices or electronic data communication devices assigned to Employee by the Company belongs to the Company.

(3) Employee recognizes that this Trade Secret-Confidential Information constitutes a valuable and unique asset of the Company, developed and perfected over considerable time and at substantial expense to the Company. During his employment and after the termination of employment, the Employee shall not disclose, without the written consent of the Company, to any person, film, partnership, association or corporation such Trade Secret-Confidential Information that came into his possession while in the employ of the Company; or otherwise use such Trade Secret-Confidential Information not for the benefit of the Company but for his own benefit or the benefit of another, and employee agrees to hold such Trade Secret-Confidential Information in trust for the sole benefit of the Company. A breach of this provision during employment shall be grounds for immediate termination of employment.

(P. Ex. A 1). Individual Defendants argue that this prohibition is overbroad because it prohibits the use or disclosure of any information obtained by Individual Defendants during the course of their employment with Maximum concerning the business or affairs of Maximum and its affiliates. Maximum argues, to the contrary, that the confidential information is reasonably limited to specific items that provide Maximum with a competitive edge and are not generally known outside the company.

12

Maximum further alleges that Individual Defendants removed lists of Maximum customers to an external site without written consent, uploaded confidential information to an external Google drive, and uploaded additional PDF files relating to customer accounts. The pleadings indicate that Individual Defendants resorted to downloading/uploading information from Maximum's network. Thus, it can be reasonably inferred that the information is proprietary, non-public, and confidential. Maximum alleges these significant details relating to the confidential information, the definition of which is not overly broad. Therefore, Section 8 of the Employment Agreement is not patently unreasonable. Individual Defendants' motion to dismiss Count XI is denied.

### B. Whether the Court has Subject Matter Jurisdiction

Individual Defendants argue that this court lacks subject matter jurisdiction under Rule 12(b)(1). The Individual Defendants argue that if the CFAA claim is dismissed, the court should then dismiss the case in its entirety for lack of subject matter jurisdiction. As indicated above, the 12(b)(6) motion to dismiss CFAA claim is denied. Even if granted, that would be no basis to deprive the court of subject matter court jurisdiction on the remaining claims. Therefore, the Rule 12(b)(1) motion to dismiss is denied.

### II. B&W's Motion to Dismiss

### A. Tortious interference with a Contractual Relationship

13

B&W argues that Maximum fails to state a valid claim for tortious interference with a contractual relationship. To state a claim for tortious interference with a contractual relationship under Illinois law, plaintiff must plead: "(1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages." *Cody v. Harris,* 409 F.3d 853, 859 (7th Cir. 2005).

Here, B&W does not challenge Maximum's complaint regarding the first two elements. Rather, B&W argues that case law prohibits Maximum from pleading tortious interference of a contract where the contract may be terminated at-will by either party to the contract. Illinois law provides that "inducing the termination of a contract, even when the termination is not a breach because the contract is terminable at will, can still be actionable under the tort law of Illinois, either as an interference with prospective economic advantage, or as an interference with the contract at will itself." *Speakers of Sport, Inc. v. ProServ, Inc.,* 178 F.3d 862, 865 (7th Cir. 1999).

Maximum agrees that the contracts are at-will but argues that this fact is not dispositive of their claim for tortious interference with a contract. Maximum contends that courts in this jurisdiction have allowed claims for tortious interference of an at-will contract to survive the motion to dismiss claim**.** Rather than alleging that B&W induced a cancellation of the at-will contracts, Maximum alleges that B&W induced a violation and breach of the at-will contracts. The latter falls within the proper pleading requirements for the third element of tortious interference with a contractual relationship.

14

A plaintiff can plead tortious interference of an at-will contract when the contract contains a valid non-compete provision. *See ATC Healthcare Services, Inc. v. RCM Technologies, Inc.,* 2016 WL 3521883, *11 (N.D. Ill. 2016)(stating that plaintiff could adequately allege a breach of an at-will contract by alleging that defendant intentionally tried to induce employees to violate the non-compete provisions in their contracts); *see also Europlast, Ltd. v. Oak Switch Systems, Inc.,* 10 F.3d 1266, 1274 (7th Cir. 1993)(stating that the court does not agree that defendant is excused from liability merely because of the individual's status as an at-will employee). Until the at will contract is terminated, "the contract is valid and subsisting, and the defendant may not improperly interfere with it." *Kemper v. Worcester*, 435 N.E.2d 827 (Ill. App. Ct. 1982).

Maximum alleges that "[B&W] intentionally interfered with Maximum's rights under Sections 6, 7 and 8 of the Agreements with [Individual Defendants] by knowingly employing or otherwise associating with them to solicit customers, misappropriate Maximum's confidential information, and induce Maximum's employees to be disloyal and terminate their employment to work for a competing business." (Compl. Par. 78). Maximum also alleged that B&W "knew, was aware, or was on notice that [Individual Defendants] were bound by the Agreements with Maximum." Notably, Maximum also alleged that on January 6, 2016, B&W exchanged email communication with Smith regarding a face-to-face meeting. It can be reasonably inferred that information was exchanged during this face-to-face meeting. Maximum should have the opportunity to engage in fact discovery to

15

determine the nature of this meeting and other communications that took place.

Maximum also alleges that on March 24, 2016, B&W employee Dennis Brady emailed Smith stating that B&W "will indemnify you so long as you are not in breach of any of your contractual obligations." (Compl. Par. 35). B&W argues that this statement displays that B&W did not seek to induce or tortiously interfere with Maximum's contracts with Individual Defendants. However, Maximum alleges facts displaying that B&W's actions show otherwise. Maximum alleges that from January 6, 2016 to March 24, the contracts between Maximum and the Individual Defendants were still operative and enforceable. Maximum alleged facts that B&W engaged in conversations with Smith regarding the Individual Defendants' employment with B&W. Despite the contract being at-will, it was still in effect when B&W engaged in these discussions with the Individual Defendants. It can be reasonably inferred that B&W, through their employment discussions, tortiously interfered with Maximum's contractual agreements.

Maximum also alleges that B&W, and the Individual Defendants, violated Section 7 of the Agreement, which states as follows:

> "Non-Recruitment Provision. Employee agrees that he will not, both during employment and for a period of one year following the termination of his employment, either alone or in conjunction with any other person or entity, solicit, induce, encourage or recruit any employee of Company to leave the employ of Company."

(P. Ex. A 1). This provision displays that Individual Defendants had an ongoing contractual duty not to recruit employees during and one year following their

16

employment with Maximum. The non-recruitment provision, which is not challenged by any of the Defendants, imposes a contractual duty on the Individual Defendants for one year following their April 4, 2016 resignation. It can be reasonably inferred that B&W was fully aware of this ongoing contractual duty. B&W's employing Individual Defendants and allowing those individuals to use potentially confidential information to recruit customers constitutes an inducement of a contract breach, which proximately caused the actual breach and damages suffered by Maximum. Therefore, B&W's motion to dismiss Count IX is denied.

### B. Tortious Interference with a Prospective Economic Advantage (TIPEA)

B&W argues that Maximum fails to plead a claim for TIPEA. For a plaintiff to properly state a claim for TIPEA, they must plead the following elements: "(1) a reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of this expectation; (3) defendants' purposeful interference that prevents the plaintiff's legitimate expectation from becoming a valid business relationship; and (4) damages." *Cody,* 409 F.3d at 859; *citing to Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (1991). Also, for a TIPEA claim brought under Illinois law, "there is a rebuttable presumption that at-will employment will continue as long as both parties desire that the economic relationship remain in place." *Ali v. Shaw*, 481 F.3d 942, 944–45 (7th Cir. 2007).

B&W argues that Maximum could have no reasonable expectation of entering into a valid business relationship with the Individual Defendants because they were

17

at-will employees. In contrast, Maximum argues that there is a rebuttable presumption that the at-will employment will continue and that B&W has failed to overcome the rebuttable presumption. Maximum alleges that Maximum invested significant resources into the Individual Defendants and entrusted them with a considerable amount of confidential information. Maximum argues that these allegations provide the basis that Maximum had a reasonable expectation of entering into a valid business relationship. It can be reasonably inferred, based on Maximum's allegations, that B&W and the Individual Defendants were on notice that Maximum expected that the Individual Defendants would continue employment with Maximum.

B&W also argues that Maximum failed to plead around the competitor's privilege. In Illinois, "commercial competitors are privileged to interfere with one another's prospective business relationships provided their intent is at least in part, to further their businesses and is not solely motivated by spite or ill will." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 882 N.E.2d 1011, 1019 (Ill. 2008). The competitor's privilege "allows one to divert business from one's competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business and is not solely motivated by spite or ill will." *Soderlund Brothers., Inc. v. Carrier Corp.,* 663 N.E.2d 1 (Ill. App. Ct. 1995). Generally, a company may try to take a competitor's employees if it can do so without inducing a breach of contract. *Speakers of Sport, Inc. v. ProServ. Inc.,* 178 F.3d 862, 865 (7th Cir. 1999). Notably, the competitor's privilege "is an affirmative

18

defense to the tort of intentional interference with prospective business advantage." *General Motors Corp. v. State Motor Vehicle Review Bd.,* 862 N.E.2d 209, 220 (Ill. 2008). The Seventh Circuit notes that "[c]omplaints need not anticipate or attempt to defuse potential defenses." *See U.S. Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 626 (7th Cir.2003). Thus, Maximum was not required to plead allegations that consider anticipatory defenses, such as the competitor's privilege, in their complaint.

The court notes that even it were to require Maximum to plead around the competitor's privilege, which it is not, Maximum has successfully done so by alleging facts displaying that B&W's actions were motivated by spite or ill will. Maximum has alleged that B&W has used, and continues to use, through its employees, confidential information that was improperly stolen from Maximum. These allegations are sufficient for pleading tortious interference with a prospective economic advantage. *See Lawson Prods., Inc. v. Chromate Indus. Corp.*, 158 F.Supp. 2d 860, 866 (N.D. Ill. 2001)(court recognizes that using wrongfully obtained confidential information constitutes a showing of bad faith). Therefore, B&W's motion to dismiss Count X is denied.


C. Civil Conspiracy

B&W argues that Maximum fails to properly allege the elements for civil conspiracy. Civil conspiracy, in Illinois, is defined as "a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose unlawful means." *Adcock v. Brakegate, Ltd.,*

645 N.E.2d 888, 894 (Ill. 1994). To succeed in a cause of action for civil conspiracy under Illinois law, "[a] plaintiff must allege facts establishing both (1) an agreement to accomplish such a goal and (2) a tortious act committed in furtherance of that agreement." *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 939 (7th Cir. 2012). Civil conspiracy claims "ha[ve] the effect of extending liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act." *McClure v. Owens Corning Fiberglas Corp.,* 720 N.E.2d 242, 258 (Ill. 1999); *citing to Adcock,* 645 N.E.2d at 894.

B&W argues that Maximum claim for civil conspiracy fails because Maximum fails to allege facts establishing that a tortious act was committed in furtherance of the agreement. B&W contends that because Count IX and Count X fail, the civil conspiracy claim fails. However, as stated above, Count IX and Count X are not dismissed from this action. Moreover, Maximum alleges that B&W exchanged emails with Smith, met with Smith, had discussions regarding the hiring of the Individual Defendants, and subsequently employed those Individual Defendants. At this stage of the proceedings, it can be reasonably inferred that B&W understood the general objectives of the scheme, possibly furthered the scheme, and implicitly accepted the tortious acts based on the totality of the circumstances. Based on the foregoing analysis, B&W's motion to dismiss Count XII is denied.

## CONCLUSION

Based on the foregoing analysis, Individual Defendants' partial motion to dismiss is denied and B&W's partial motion to dismiss is denied.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:   October 28, 2016